```
 1 | SCOTT + SCOTT LLC
   | Arthur L. Shingler III (181719)
 2 | 600 B Street, Suite 1500
   | San Diego, CA 92101
 3 | Tel.: 619/233-4565
   | Fax: 619/233-0508
 4 |
   | SCOTT + SCOTT, LLC
 5 | David R. Scott
   | 108 Norwich Avenue
 6 | P.O. Box 192
   | Colchester, CT 06415
 7 | Tel.: 860/537-5537
   | Fax.: 860/-537-4432
 8 |
   | SCOTT + SCOTT, LLC
 9 | Geoffrey M. Johnson
   | 33 River Street
10 | Chagrin Falls, OH 44022
   | Tel: 440/247-8200
11 | Fax: 440/247-8275
12 | Counsel for Plaintiff
```

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ZIOLKOWSKI, | Civil Action No. C 06 3445 |
| Plaintiff, | |
| vs. | **VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT AND RECISSION** |
| KENNETH LEVY; KENNETH SCHROEDER; JON TOMPKINS; RICHARD WALLACE; GARY DICKERSON; DENNIS FORTINO; JOHN KISPERT; ARTHUR SCHNITZER; ROBERT BOEHLKE; H. RAYMOND BINGHAM; ROBERT BOND; LIDA URBANEK; RICHARD ELKUS; MICHAEL MARKS; STEPHEN KAUFMAN; DEAN MORTON; EDWARD BARNHOLT; | |
| Defendants, | **JURY TRIAL DEMANDED** |
| -and- | |
| KLA-TENCOR CORPORATION; | |
| Nominal Defendant. | |

E-filing

## NATURE OF ACTION

1. Plaintiff James Ziolkowski, by his undersigned attorneys, submits this Verified Derivative Complaint. This is a shareholders' derivative action brought in the name of and for the benefit of nominal defendant KLA-Tencor Corporation ("KLA" or the "Corporation") against certain current and former executive officers and members of the Board of Directors of KLA. The action arises from defendants' obtaining, approving, and/or acquiescing in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of KLA.

2. Defendants Kenneth Levy ("Levy") and Kenneth Schroeder ("Schroeder") would have us believe that they are the luckiest men in corporate America. As Chairman of KLA, Levy and other top executives at the Corporation purport to have received KLA stock options during the 1990s and early part of this decade at abnormally low and statistically anomalous exercise prices. For instance, in 2001, the Corporation granted its top executives, including Chairman Levy, two batches of stock options. They arrived on unusually fortunate days for the executives: The first dated at the share price's first-half low; the second at its second-half low.



In all, Mr. Levy received 10 grants from KLA and its predecessor company between 1994 and 2001 – all preceding quick runups in the share price; an analysis by *The Wall Street Journal* found the probability that that pattern occurred merely by chance is tiny – around one in 20 million.

3.      In reality, Levy and Schroeder and other KLA executives received these options through a breach of fiduciary duty and a violation of law. Stock option grants to KLA executives were at all relevant times required to carry an exercise price that was not less than the fair market value of the KLA stock on the date of the grant and issuance, as measured by the public trading price of the stock at the market's close on that date. Nevertheless, throughout the relevant period, stock option grants to Levy and Schroeder and other KLA executives were repeatedly backdated to grant dates on which the stock price was at an especially low point during the quarter or fiscal year period. The claimed dates of grant were untrue, and the options were actually granted on later dates and, with the benefit of hindsight, falsely ascribed to earlier, more favorable dates.

4.      Arthur Levitt, former head of the SEC, has stated that backdating "represents the ultimate in greed. It is stealing, in effect. It is ripping off shareholders in an unconsciousable way." Backdating stock option grants to obtain beneficial exercise prices is akin to picking lottery numbers on the day after the winning numbers are reported in the news. It is a reckless and unlawful exercise that unjustly appropriates corporation assets and benefits. Accordingly, all of the now unexercised options should be immediately cancelled and all of the financial gains to the recipients who exercised such options should be returned to the Corporation. Further, the Corporation's directors who administered and determined to grant these options utterly failed to fulfill their fiduciary duties to the Corporation and they too are accountable for that failure.

5.      Backdating is the only conceivable explanation for the remarkable pattern of options grants to KLA executives during the relevant period. Indeed, the results of a statistical analysis of the grants to Levy recently published in *The Wall Street Journal* concluded that the chances of his grants actually occurring as claimed were one in 20 million. The statistics leave no doubt that stock option grants to KLA executives during the relevant period were backdated and that, as a result,

these executives were unjustly enriched and the Corporation was deceived and harmed by defendants' actions.

6. This action, on behalf of the Corporation, seeks to remedy the harms caused to KLA by the backdating scheme and, in addition, to invalidate and nullify all executory options contracts issued pursuant to the scheme. By means of the backdating scheme, defendants caused the issuance of options bearing fraudulently low exercise prices to Levy and Schroeder and other KLA executives. Defendants also breached their duties as fiduciaries of the Corporation. Defendants owed KLA duties of care, undivided loyalty, good faith, and truthful disclosure.

7. The Officer Defendants and the Non-Management Director Defendants (both defined below) breached these duties by obtaining, approving, and/or acquiescing in the issuance of backdated stock options to KLA executives. The Officer Defendants were unjustly enriched by virtue of receiving fraudulently priced stock option grants. The Non-Management Director Defendants – and in particular the members of the Compensation and Human Resources Committee (the "Compensation Committee") – by authorizing, approving and/or acquiescing in the issuance of backdated stock options to the Officer Defendants, aided and abetted the Officer Defendants' breach of fiduciary duty, and in particular the Officer Defendants' duties of undivided loyalty to the Corporation.

**PARTIES**

8. Plaintiff James Ziolkowski currently owns KLA common stock.

9. Nominal Defendant KLA is a Delaware corporation with its principal executive offices and place of business located at 160 Rio Robles, San Jose, California. It is the world's leading supplier of process control and yield management solutions for the semiconductor and related microelectronics industries.

10. Defendant Kenneth Levy ("Levy") is a founder of KLA Instruments Corporation and has been a Director since 1975. Since July 1, 1999, he has been Chairman of the Board of KLA. From July 1998 until June 30, 1999, he was Chief Executive Officer and a Director. As an executive and a member of the Board of Directors, he authorized, approved and received the backdated stock options grants at issue in this case.

11. Defendant Kenneth Schroeder ("Schroeder") is the Chief Executive Officer of KLA and serves as a Director. As an executive and a member of the Board of Directors, he authorized, approved and received the backdated stock options grants at issue in this case.

12. Defendant Jon D. Tompkins ("Tompkins") has been a Director of KLA since April 1997. He was Chairman of the Board from July 1998 to June 1999. From May 1997 until July 1998, he was Chief Executive Officer. As an executive and a member of the Board of Directors, he authorized, approved and received the backdated stock options grants at issue in this case.

13. Defendant Richard Wallace ("Wallace") served as President and Chief Operating Officer for KLA. As an executive and a member of the Board of Directors, he authorized, approved and received the backdated stock options grants at issue in this case. As alleged herein, he received the backdated stock option grants at issue in this case.

14. Defendant Gary E. Dickerson ("Dickerson") served as KLA's President and Chief Operating Officer. As alleged herein, he received the backdated stock option grants at issue in this case.

15. Defendant Dennis J. Fortino ("Fortino") served as KLA's Executive Vice-President of Corporate Operations. As alleged herein, he received the backdated stock option grants at issue in this case.

16. Defendant John Kispert ("Kispert") served as KLA's Executive Vice-President and Chief Financial Officer. As alleged herein, he received the backdated stock option grants at issue in this case.

17. Defendant Arthur Schnitzer ("Schnitzer") served as KLA's Executive Vice-President of its Customer Group. As alleged herein, he received the backdated stock option grants at issue in this case.

18. Defendant Robert Boehlke ("Boehlke") served as KLA's Executive Vice-President and Chief Financial Officer. As alleged herein, he received the backdated stock option grants at issue in this case.

19. Defendants Levy, Schroeder, Wallace, Tompkins, Dickerson, Fortino, Kispert, Schnitzer and Boehlke are referred to collectively in this Complaint as the "Officer Defendants."

20. Defendant H. Raymond Bingham ("Bingham") has been a Director of KLA since October 1999. He also served on KLA's Audit Committee. As a member of the Board of Directors, he authorized and approved the backdated stock option grants at issue in this case. As a member of the Audit Committee, he also approved the corporation's false financial disclosures, as alleged herein.

21. Defendant Robert T. Bond ("Bond") has been a Director of KLA since August 2000. He also served on KLA's Audit and Compensation Committees. As a member of the Board of Directors and the Compensation Committee, he authorized and approved the backdated stock option grants at issue in this case. As a member of the Audit Committee, he also approved the corporation's false financial disclosures, as alleged herein.

22. Defendants Lida Urbanek ("Urbanek") has been a Director of KLA since April 30, 1997. She also served on KLA's Compensation Committee. As a member of the Board of

Directors and Compensation Committee, she authorized and approved the backdated stock option grants at issue in this case.

23. Defendant Richard J. Elkus, Jr. ("Elkus") has been a Director of KLA since August 2000. He also served on KLA's Audit Committee. As a member of the Board of Directors, he authorized and approved the backdated stock option grants at issue in this case. As a member of the Audit Committee, he also approved the corporation's false financial disclosures, as alleged herein.

24. Defendant Michael E. Marks ("Marks") has been a Director of KLA since November 2003. He also served on KLA's Compensation Committee. As a member of the Board of Directors and Compensation Committee, he authorized and approved the backdated stock option grants at issue in this case.

25. Defendant Edward W. Barnholt ("Barnholt") has been a Director of KLA since 1995. As a member of the Board of Directors, he authorized and approved the backdated stock option grants at issue in this case.

26. Defendant Stephen P. Kaufman has been a Director of KLA since November 2002. He also served on KLA's Audit Committee. As a member of the Board of Directors, he authorized and approved the backdated stock option grants at issue in this case. As a member of the Audit Committee, he also approved the corporation's false financial disclosures, as alleged herein.

27. Defendant Dean O. Morton served as a Director of KLA. He also served on KLA's Audit Committee. As a member of the Board of Directors, he authorized and approved the backdated stock option grants at issue in this case. As a member of the Audit Committee, he also approved the corporation's false financial disclosures, as alleged herein.

28. Defendants Bond, Barnholt, Marks, Urbanek, Bingham, Elkus, Kaufman and Morton are referred to collectively in this Complaint as the "Non-Management Director Defendants."

29. The Officer Defendants and the Non-Management Director Defendants are referred to collectively herein as the "Individual Defendants."

## JURISDICTION AND VENUE

30. This Court has jurisdiction over this action under 28 U.S.C. § 1332, because the Plaintiff is a resident of the State of New York and the amount in controversy exceeds $75,000.

31. Venue is proper in this District because nominal defendant KLA is headquartered in this District and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this District.

## FACTUAL ALLEGATIONS

32. Defendant Levy and Schroeder, along with the other Officer Defendants, purportedly received grants of stock options from the Corporation on unusually favorable dates over the past several years. These stock options were claimed to have been granted at or near the stock's annual low, or immediately after a substantial dip in the stock price followed by a substantial run-up. Analysis of this seemingly fortuitous pattern of stock option grants reveals that the pattern could not have resulted innocently. Rather, the only possible explanation is that these stock option grants were, in fact, *backdated* to allow the options' recipients to enjoy the largest possible returns at the expense of the Corporation.

33. A stock option is a right to purchase a particular stock at a fixed price, called the "exercise" or "strike" price. When the stock's market price exceeds the strike price, the option holder may purchase the stock at the exercise price and resell it at the higher market price, pocketing the difference. The lower the strike price of the option, the larger the sum obtained when the option is exercised.

34. At all relevant times, stock option grants to the Officer Defendants were required to carry a strike price not less than the publicly traded closing price of the stock <u>on the date of grant</u>. All executive compensation stock options to the Officer Defendants during the relevant period were issued pursuant to the KLA Stock Option Plan.

35. It is now evident that the Individual Defendants did not comply with the requirement that stock options granted to the Officer Defendants be priced on the date of grant or issuance. The multi-year pattern of stock option grants on dates with highly favorable exercise prices – invariably at historic stock price lows or right before a large stock price run-up – indicates that the purported grant dates of the stock options were not the actual dates on which the option grants were made. Rather, the pattern indicates that grants to executives were repeatedly backdated to dates with exceedingly low stock prices.

36. Statistical analysis conducted by *The Wall Street Journal* demonstrates that it is virtually impossible that the pattern of grants to Levy and Schroeder and the other executives occurred randomly. For instance, *The Wall Street Journal* concluded that the odds of the pattern of grants received by Defendant Levy occurring by chance were 1 in 20 million.





**Ken Levy**
KLA-Tencor, founder, chairman and former chief executive

Total grants: 10

Odds: 1 in 20 million

37. Only by backdating the stock option grants – reviewing the share price in hindsight and retrospectively identifying the low points – could the Individual Defendants have achieved this

1  highly suspicious pattern of grants. The practice is the equivalent of placing a wager on a horse race
2  after the race has already been won and the identity of the winning horse is known to all.

3       38.     The backdating of stock option grants and the issuance of these options in the
4  amounts awarded to the Officer Defendants caused, and continues to cause, substantial harm to the
5  Corporation. Backdating stock option grants represents a direct and continuing waste of valuable
6  corporate assets. KLA is the counterparty to the option contracts with its executives, and the
7  proceeds obtained, and yet to be obtained, by these executives through exercising their backdated
8  stock options are therefore siphoned, on a dollar for dollar basis, directly from KLA. In effect, the
9  backdated grants gave the Officer Defendants an option to purchase KLA shares directly from the
10 Corporation at an unfair and improperly low price, with the Corporation making up the difference.

11      39.     The practice of backdating stock options also substantially harmed, and continues to
12 harm, KLA by virtue of the fact that the practice is unlawful, deceitful, and caused the Corporation
13 to misreport its financial data. Under the relevant accounting rules, options priced below the stock's
14 fair market value upon award are considered compensation and must, therefore, be treated by the
15 Corporation as an expense directly impacting earnings. Upon information and belief, KLA did not
16 properly expense this compensation to the Officer Defendants even though the backdated stock
17 options at issue in this action were priced below the fair market value of the Corporation's stock at
18 the date of grant and issuance.

19      40.     Further, the option backdating likely caused KLA to violate the Internal Revenue
20 Code. Indeed, compensation from exercised stock options issued under the backdating scheme that
21 was previously deducted, was in fact, nondeductible under Section 162(m) of the Internal Revenue
22 Code. Accordingly, the Corporation will likely be required to pay additional taxes and interest
23 associated with deductions it previously took for compensation associated with such exercised stock
24 options.

41. Backdating stock options also severely undermines the already grossly excessive incentives that purportedly justified the use of stock options to compensation KLA's management. Stock option compensation is intended to encourage management to maximize the return to shareholders by aligning the interests of management with those of shareholders. However, by permitting the Officer Defendants to receive stock option grants backdated to correspond to low points in the stock price, the Non-Management Director Defendants created an absurd incentive for management to engineer dips and volatile swings in the stock price. Further, the size and terms of the grants were so excessive that they incentivized management to retire rather than work.

42. Issuing backdated stock options is unlawful, *ultra vires* and outside the scope of legitimate and permissible business conduct. The practice is inherently manipulative and involves a substantial likelihood that business records were intentionally falsified. Issuing backdated stock options is, therefore, not a form of business conduct and is not protected by the business judgment rule.

### DERIVATIVE ACTION ALLEGATIONS

43. Plaintiff brings this action derivatively on behalf and for the benefit of KLA to redress injuries suffered, and yet to be suffered, by the Corporation as a direct and proximate result of the breaches of fiduciary duty and other legal violations alleged herein. KLA is named as a nominal defendant solely in a derivative capacity.

44. Plaintiff is a holder of KLA common stock who is prepared to adequately and fairly represent the interests of the Corporation and its shareholders in this litigation.

45. Plaintiff presently owns KLA common shares. Plaintiff owned common shares of KLA at the time of the injurious acts complained of herein.

46. The wrongful acts complained of herein subject, and will persist in subjecting, the Corporation to continuing harm because the adverse consequences of the injurious actions are still in effect.

47. The wrongful actions complained of herein were fraudulently concealed from KLA shareholders.

48. This is not a collusive action to confer jurisdiction on a court of the United States.

## DEMAND EXCUSED ALLEGATIONS

49. Plaintiff has made no demand on the KLA Board of Directors to institute an action in connection with the wrongs alleged herein. Such demand would be futile and useless and is excused.

50. The wrongful acts complained of herein were self dealing, outside the scope of the Board of Directors' authority, and served no legitimate business purpose. Such acts were not, nor could they have been, the product of a valid or good faith exercise of business judgment. Such acts were, moreover, unlawful and incapable of ratification. Accordingly, the actions complained of herein are not protected by the business judgment rule, and the related requirement of pre-suit demand on the Board of Directors is therefore inapplicable and excused.

51. The wrongful acts complained of herein were, furthermore, approved by and/or performed for the benefit of an overwhelming majority of the Board of Directors as it is presently constituted. As members of the Board of Directors during the period of backdating, every single current Non-Management Director Defendant approved backdated stock options. Moreover, a majority of the current Board of Directors' members either personally benefited from backdated stock options, or were members of the Compensation Committee that was directly responsible for authorizing the backdated stock options.

52. Defendants Levy, Schroeder and Tompkins collectively reaped millions of dollars by backdating their own stock option grants. As for the remainder of the Directors – and those Directors who sat on the Compensation Committee, in particular – they are guilty of approving stock option grants that were priced as of a date prior to the date on which they were granted. This is an unlawful violation of the Corporation's own stock option granting policies. Accordingly, a majority of the members of the Board of Directors as presently composed were either directly responsible for administering the unlawfully backdated option grants challenged in this litigation, or directly and personally benefited from the backdated grants. There is substantial reason to doubt that the current members of the Board of Directors can and/or will pursue litigation to remedy harms resulting from their own performance of, and/or acquiescence in, unlawful acts with no ascertainable connection to the exercise of business judgment.

53. There is also substantial reason to doubt that the current members of the Board of Directors are sufficiently independent to prosecute this action. The members of the Board of Directors have themselves each individually gained tremendous wealth through their own receipt and exercise of KLA stock options since at least the outset of this time period.

## CAUSE OF ACTION

### COUNT I

**AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY**

54. Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

55. The Individual Defendants, by reason of their positions as fiduciaries of the Corporation, owed duties of due care, undivided loyalty, good faith, and truthful disclosure. The Individual Defendants violated and breached these duties. Each of the Officer Defendants were recipients of backdated options bearing fraudulent prices. Each of the Non-Management Director

Defendants approved, ratified or were otherwise responsible for administering and/or permitting the backdated options to be granted to the Officer Defendants.

56. The Directors, including the Officer Defendants, the Non-Management Directors and, particularly those directors who were members of the Compensation Committee during the period that the backdated options were granted, each abandoned and abdicated their fiduciary responsibilities to the Corporation. Their conduct could not have been an exercise of good faith business judgment. Further, those directors who were members of the Audit Committee breached their fiduciary duties to the Corporation by allowing the filing and dissemination of false and inaccurate financial statements not prepared in accordance with GAAP.

57. As a direct and proximate result of the Individual Defendants' breach of fiduciary duty and waste of corporate assets, the Corporation has sustained, and will continue to sustain, substantial harm.

58. The Individual Defendants are liable to the Corporation as a result of the acts alleged herein.

## COUNT II

### AGAINST THE NON-MANAGEMENT DIRECTOR DEFENDANTS FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

59. Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

60. By reason of their positions as fiduciaries of the Corporation, the Officer Defendants owed duties of due care, undivided loyalty, good faith, and truthful disclosure. The Officer Defendants violated and breached these duties.

61. By virtue of their role in creating and administering the Corporation's stock option plan, and their approval and authorization of the stock options that were backdated as alleged herein, the Non-Management Director Defendants were able to, and in fact did, render aid and assistance to

- 13 -

the Officer Defendants in their breach of fiduciary duty. The Non-Management Director Defendants did so knowing, or but for their gross negligence would have known, of the Officer Defendants' fiduciary breach.

62. As a direct and proximate result of the Non-Management Director Defendants' aiding and abetting the Officer Defendants' breach of fiduciary duty, the Corporation has sustained, and will continue to sustain, substantial harm.

63. The Non-Management Director Defendants are liable to the Corporation as a result of the acts alleged herein.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT

64. Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

65. As a direct and proximate result of the acts alleged herein, the Officer Defendants wrongfully deprived the Corporation of substantial wealth and were unjustly enriched thereby.

66. The Officer Defendants are liable to the Corporation as a result and should be required to disgorge their unjust gains and return them to the Corporation.

## COUNT IV

### AGAINST THE OFFICER DEFENDANTS FOR RECISSION

67. Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

68. As a result of the acts alleged herein, all stock option contracts between the Officer Defendants and KLA entered into during the relevant period were obtained through the Officer Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options and the shares underlying these options were not duly authorized by the Board, as was legally required, because

- 14 -

they were not authorized in accordance with the terms of publicly filed contracts – including the Plan and the Officer Defendants' employment agreements – approved by KLA shareholders and filed with the SEC.

69.     All stock option contracts between the Office Defendants and KLA entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Corporation, and all such executory contracts cancelled and declared void.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding to the Corporation money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein;

B.     Awarding to the Corporation restitution from each of the Officer Defendants and ordering disgorgement of all profits, benefits, and/or other compensation obtained by the Officer Defendants as a result of the acts and transactions complained of herein;

C.     Rescission of all option contracts granted to the Officer Defendants as a result of the acts and transactions complained of herein and the cancellation, nullification, and declaration as void of any and all current or future obligations of the Corporation under all executory contracts obtained by the Officer Defendants as a result of the acts and transactions complained of herein;

D.     Formation of a constructive trust to hold all executory options contracts issued to the Officer Defendants;

E.     Awarding punitive damages against the Officer Defendants;

F.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.     Granting such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 26, 2006

Respectfully submitted,

*[signature]*

**SCOTT + SCOTT, LLC**
Arthur Shingler, III
600 B. Street, Suite 1500
San Diego, CA 92101
Telephone: (619) 233-4565

**SCOTT + SCOTT, LLC**
David R. Scott
Denise Zamore
108 Norwich Avenue
P. O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

**SCOTT + SCOTT, LLC**
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

*Counsel for Plaintiff*