IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re KLA-Tencor Corp. Shareholder Derivative Action. | NO. C 06-03445 JW<br><br>**ORDER DENYING THE SPECIAL LITIGATION COMMITTEE'S MOTION TO (1) TERMINATE AND DISMISS THE AMENDED CONSOLIDATED COMPLAINT AND (2) APPROVE SETTLEMENTS WITH CERTAIN INDIVIDUAL DEFENDANTS; DENYING INDIVIDUAL DEFENDANTS' APPLICATIONS FOR GOOD FAITH SETTLEMENT; DENYING DEFENDANT DICKERSON'S MOTION TO STRIKE;**<br><br>**[REDACTED VERSION;<br>ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT PUBLISH THE UNREDACTED VERSION]**[1] |

## I. INTRODUCTION

Plaintiff shareholders bring this derivative action on behalf of KLA-Tencor Corp. ("KLA") against KLA's Board of Directors ("Board") and numerous former and current KLA executives, alleging, *inter alia*, violations of federal securities laws and breaches of fiduciary duties. Plaintiffs allege that Defendants permitted senior KLA insiders to unlawfully manipulate the grant dates associated with KLA stock options, resulting in hundreds of millions of dollars of losses to KLA.

---

[1] The Court publishes this redacted version of the Order because it cites to evidence submitted under seal. However, on or before **December 17, 2008**, the parties shall file appropriate briefs to show cause, if any, why this Order should not be published in full.

Presently before the Court is the Motion by the Special Litigation Committee of KLA-Tencor's Board of Directors ("SLC"), (1) to Terminate and Dismiss the Amended Consolidated Complaint, and (2) to Approve Settlements with Certain Individual Defendants.[2] (hereafter, "Motion," Docket Item. No. 156.) The Court conducted a hearing on October 6, 2008. Based on the papers submitted to date and oral argument, the Court DENIES the SLC's Motion to Terminate and Dismiss the Amended Consolidated Complaint, and DENIES the SLC's Motion to Approve Settlements with Individual Defendants Kenneth Levy, Jon Tompkins, and Gary Dickerson.

## II.  BACKGROUND

KLA is a supplier of process control and yield management solutions for the semiconductor and related microelectronics industries. (Amended Consolidated Verified Derivative Complaint ¶ 89, hereafter, "Complaint," Docket Item No. 88.) On May 22, 2006, the Wall Street Journal reported on the possibility that stock option backdating may have occurred at KLA.[3] On May 26, 2006, the first of four shareholder derivative actions were filed in the Northern District of California. On October 23, 2004, these actions were consolidated into this case. (Order Consolidating Related Derivative Cases and Appointing Lead Plaintiff and Lead Counsel, Docket Item No. 76.)

In response to the filing of derivative litigation, on November 16, 2005, the KLA Board formed the SLC and appointed Directors Stephen P. Kaufman ("Kaufman") and David C. Wang ("Wang") to serve as its two members. (Motion at 4.) Kaufman had been elected to the KLA Board on November 8, 2002, had been a member of KLA's Audit Committee since 2003, and had been on

---

[2] The SLC moves to approve settlements with Individual Defendants Kenneth Levy ("Levy"), Kenneth Schroeder ("Schroeder"), Jon Tompkins ("Tompkins"), and Gary Dickerson ("Dickerson") pursuant to Fed. R. Civ. P. 23.1. In addition, Defendants Dickerson, Tompkins, and Levy each move individually for approval of settlements. (Docket Item Nos. 185, 186, 194, 195, and 216, respectively.) Defendant Dickerson moves to strike Plaintiffs' Opposition to his Application for Good Faith Settlement. (Docket Item No. 363). The Court DENIES Defendant Dickerson's motion to strike.

[3] (Lead Plaintiff's Opposition to the Motion by the SLC of KLA-Tencor's Board of Directors, (A) to Terminate and Dismiss the Amended Complaint, and (B) to Approve Settlements with Certain Individual Defendants at 4-5, hereafter, "Opposition," Docket Item No. 288.)

the Nominating and Governance Committee since 2005.[4] In addition, Kaufman served on the KLA "Special Committee," that initially oversaw the internal investigation into the alleged backdating at KLA following the May 22, 2006 Wall Street Journal report. (Kaufman Decl. 1 ¶¶ 16-22.) Wang became a KLA Director in May 2006 and a member of the Audit Committee in 2007. (Motion at 6.)

In the November 16, 2005 resolution creating the SLC, the KLA Board gave the SLC the following mandate:

> [F]ull and exclusive power and authority of the Board of Directors to (i) investigate, review, and evaluate the facts and circumstances asserted in the Derivative Suits; (ii) accept, reject, or modify the preliminary findings and recommendations of the Special Committee; (iii) determine whether the Company should commence or continue litigation concerning any of the claims or causes of action asserted in the Derivative Suits and to authorize the commencement of and direct the prosecution or settlement of the Derivative Suits or of any litigation it may authorize related to the Company's past grants of stock options; and (iv) evaluate and determine whether all or some of the other actions requested (or that may be requested) in the Derivative Suits should be pursued by the Company and, in connection therewith, to adopt any new or modified corporate policies or procedures or other internal corrective measures as the SLC deems appropriate.[5]

Pursuant to this mandate, the SLC conducted a factual investigation of the claims against the individually named Defendants in the Derivative Action.[6] This investigation included evaluation of memoranda from 71 interviews of 55 individuals previously conducted by the Special Committee, review of documentary evidence, and analysis of the facts and circumstances surrounding the largest 50 of KLA's 180 stock option grants after 1995. (Report at 42-46.) The SLC's investigation culminated in the issuance of its Report on March 25, 2008, filed with the Court in conjunction with this Motion to Terminate and Dismiss the Derivative Action. In the aftermath of the SLC's filing,

---

[4] (Declaration of Stephen P. Kaufman in Support of Motion by the Special Litigation Committee of KLA-Tencor's Board of Directors, (A) to Terminate and Dismiss the Amended Consolidated Complaint, and (B) to Approve Settlements with Certain Individual Defendants ¶ 1, hereafter, "Kaufman Decl. 1," Docket Item No. 156.)

[5] (Supplemental Declaration of Stephen P. Kaufman in Support of Motion by the Special Litigation Committee of KLA-Tencor's Board of Directors (A) to Terminate and Dismiss the Amended Consolidated Complaint, and (B) to Approve Settlements with Certain Individual Defendants, Ex. 3, hereafter, "Kaufman Decl. 2," Docket Item No. 156.)

[6] (Report of the Special Litigation Committee of the Board of Directors of KLA-Tencor Corporation, Kaufman Decl. 2, Ex. A, hereafter, "Report," Docket Item No. 156.)

Magistrate Judge Lloyd found that "the SLC Report is somewhat lacking in terms of evidentiary support for the conclusions reached," and permitted Plaintiffs to conduct further discovery into the SLC's operations and conclusions. (Order on Motion for Protective Order on the Scope of Discovery by KLA-Tencor Board of Directors' Special Litigation Committee at 3, Docket Item No. 263.) Plaintiffs have conducted additional discovery, which included the depositions of SLC members Kaufman and Wang. (Opposition at 6.)

### III.  DISCUSSION

The Special Litigation Committee moves to terminate this derivative action and dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 23.1. Rule 23.1 provides that "a derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation" and that "[a] derivative action may be settled . . . only with the court's approval." Fed. R. Civ. P. 23.1(a), (c). The SLC contends that, given the conclusions reached in its Report, this derivative action is no longer in the best interests of KLA or its shareholders. (Motion at 13.)

A special litigation committee has the power to terminate a derivative action to the extent allowed by the law of the state of incorporation. Burns v. Lasker, 441 US. 471, 486 (1979). Since KLA is a Delaware corporation, the Court applies Delaware law to determine whether to grant the SLC's Motion.

**A.     Termination of Derivative Actions Under Delaware Law**

Under Delaware law, derivative litigation may be terminated with leave of the court when the corporation's special litigation committee makes a motion to terminate based on the best interests of the corporation. Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del. 1981). The motion must be supported by a thorough written record that speaks to three separate elements: "(1) the investigation made by the committee; (2) the findings of the committee; and (3) the recommendation of the committee." Kaplan v. Wyatt, 484 A.2d 501, 506 (Del. Ch. 1984); aff'd 499 A.2d 1184 (Del. 1985) ("Kaplan I").

Although the court should treat the motion as a hybrid between a motion for summary judgment and a motion to dismiss, the standard to be applied is "procedurally akin to a motion for summary judgment" under Fed. R. Civ. P. 56. <u>Id.</u> at 507. That is, the corporation, through the committee, "has the normal burden imposed on a moving party under a Rule 56 motion of demonstrating that there is no genuine issue as to any material fact and that the corporation is entitled to dismiss the complaint as a matter of law." <u>Id.</u>

Specifically, a special litigation committee must satisfy the Rule 56 standard in the context of a two-step analysis of its recommendations. <u>Zapata</u>, 430 A.2d at 788. In the first step, a court "should inquire into the independence and good faith of the committee and the bases supporting its conclusions." <u>Id.</u> The corporation "has the burden of proving independence, good faith and a reasonable investigation." <u>Id.</u> The court must deny the committee's motion if it determines that the committee "is not independent or has not shown a reasonable basis for its conclusions, or, if the court is not satisfied for other reasons relating to the process, including but not limited to the good faith of the committee." <u>Id.</u> at 789. Such a determination is made upon consideration of the totality of the circumstances and looks at whether the committee members are "in a position to base [their] decision on the merits of the issue rather than . . . extraneous considerations or influences." <u>Kaplan v. Wyatt</u>, 499 A.2d 1184, 1189 (Del. 1985) ("<u>Kaplan II</u>"). Among the factors courts consider in this analysis are: (1) Status of a committee member as a defendant and potential liability; (2) participation in or approval of the alleged wrongdoing; (3) past or present business dealings with the corporation; (4) past or present business or social dealings with individual defendants; (5) the number of directors on the committee; and (6) the structural bias of the committee. See <u>Johnson v. Hui</u>, 811 F. Supp. 479, 486 (N.D. Cal. 1991) (reviewing Delaware law on termination of derivative litigation).

If in the first step a court determines that there are disputed issues of material fact relating to the committee's independence, good faith, or reasonableness of its conclusions, "the shareholder plaintiff may resume immediate control of the litigation with a view toward prosecuting it to a

5

1 conclusion regardless of the position taken by the special [litigation] committee." Kaplan I, 484
2 A.2d at 508.

3 If in the first step, however, the committee meets its burden of demonstrating that it acted in good faith, was independent, and came to reasonable conclusions under the first step of the Zapata inquiry, the court proceeds to the second step, in which the court "should determine, applying its own business judgment, whether the motion should be granted." Zapata, 430 A.2d at 789. The result of applying the second step is that a motion for termination can be denied, even where a committee can establish it independence and sound bases for its good faith decisions. Id. This step therefore acts as a backstop and is "intended to thwart instances where corporate actions meet the criteria of step one, but the result does not seem to satisfy its spirit, or where corporate actions would simply prematurely terminate a stockholder grievance deserving of further consideration in the corporation's interest." Id.

### B. Whether the SLC Meets the Standards of Zapata's First Step

The SLC contends that it conducted a thorough, independent, and good faith investigation into Plaintiffs' claims under the first step of the Zapata inquiry. (Motion at 16.) Plaintiffs contend that there are genuine issues of material fact such that the SLC fails to meet the standard of Zapata's first step. (Opposition at 7.)

#### 1. Independence of the SLC

The SLC contends that, in view of the totality of the circumstances, it was independent, both as a whole and with respect to its individual members, Kaufman and Wang. (Motion at 17.) Plaintiffs challenge this contention on the grounds that (1) the SLC did not have authority sufficiently independent of KLA's Board and (2) Kaufman lacked individual independence. (Opposition at 11.)

In this case, several pieces of evidence suggest that the SLC was not "fully empowered to act for the company without approval by the full board." Biondi v. Scrushy, 820 A.2d 1148, 1156 (Del. Ch. 2003).

**[REDACTED]**

6

Evaluation of this evidence suggests that Kaufman was on the Board and on the Audit Committee at a time when continued backdating may have been occurring at KLA. Although this does not indicate that Kaufman committed any affirmative wrongdoing in his roles at KLA during this period, it does raise the possibility that Kaufman was tasked with investigating corporate malfeasance that he had previously, if unintentionally, approved. The fact that the SLC seems to have not pursued allegations of backdating in the post-2002 period does little to advance the argument that Kaufman was sufficiently independent, so as to meet the requirements of Zapata. Kaufman's liability for and approval of the wrongdoing at KLA may not be so "direct and substantial" as to find that he is totally lacking in independence, but the evidence does raise concerns about this issue. Johnson, 811 F. Supp. at 486.

In light of questions surrounding the extent of Kaufman's independence, the Court is concerned by the overall size of the SLC, as it consisted of only two members. There seems to be little dispute as to the independence of Wang, who did not join the KLA Board until 2006. Nonetheless, "[t]he larger the number of directors, the less weight accorded to any disabling interest affecting only one director." Id. (citing Lewis v. Fuqua, 502 A.2d 962, 967 (Del. Ch. 1985)). In this case, of a committee of only two members, there are questions relating to the independence of one of those members. This factor also weighs against a finding that the SLC was sufficiently independent under Zapata.

In sum, the Court finds that there are disputed issues of material fact relating to the SLC's independence. Although there is little evidence suggesting that Kaufman engaged in wrongdoing at KLA or would be subject to substantial liability for his actions on the KLA Board, the lack of investigation of post-2002 backdating, the small size of the SLC, and statements of counsel conflating the SLC and the company collectively put the SLC's independence into dispute.

**2.     Good Faith and Reasonableness of the Investigation**

The SLC contends that it conducted a good faith and reasonable investigation of Plaintiffs' claims. (Motion at 21.) Plaintiffs contend that the SLC's conclusions are directly contradicted by evidence, that the SLC ignored key aspects of Plaintiffs' claims, and that the resultant

7

1 recommendations improperly absolve key wrongdoers of liability in exchange for a relatively small
2 monetary recovery for KLA. (Opposition at 1-3.)
3    A number of factors in the record implicate whether the SLC's investigations and
4 conclusions were reasonable and made in good faith.
5    **[REDACTED]**
6    In sum, the Court finds that the SLC has not met its burden under <u>Zapata</u> of demonstrating
7 that there are no disputed issues of material fact as to the SLC's independence, and the good faith
8 nature and reasonableness of its inquiry. Although no single factor is dispositive in the Court's
9 determination, evaluation of the totality of the circumstances, including the size of the SLC,
10 questions surrounding its independence, and the depth and focus of its inquiry leads to this
11 conclusion. Critically, the size of the settlement that resulted from the SLC's investigation is a mere
12 fraction of the overall damages that KLA suffered as a result of Defendants' backdating activities.
13 That the SLC conducted an extensive overall investigation with the assistance of competent outside
14 counsel is not enough to overcome the Court's concerns with the meager size of the settlement,
15 especially when considered in the light of the many questionable aspects of the investigation, which
16 were discussed at length in this Order.
17    Since the Court finds that the SLC has not sustained its burden under the first prong of the
18 <u>Zapata</u> inquiry, the Court need not progress to the second prong of <u>Zapata</u> and thus need not apply
19 its own business judgment to the proposed settlement.
20    Accordingly, the Court DENIES the SLC's Motion to Terminate and Dismiss the Amended
21 Complaint.

22            **IV. CONCLUSION**

23    The Court DENIES the SLC's Motion to Terminate and Dismiss the Amended Complaint.
24 In light of its determination with respect to the SLC's Motion to Terminate and Dismiss, the Court
25 DENIES each of the Individual Defendants' Motions for Good Faith Settlement.
26    The Court sets a Case Management Conference for **January 12, 2009 at 10 a.m.** On or
27 before **January 5, 2009**, the parties shall file a Joint Case Management Statement.
28

8

Further, on or before **December 17, 2008**, the parties shall file appropriate briefs to show cause, if any, why this Order should not be published in full.

Dated: December 11, 2008

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alice L. Jensen ajensen@fenwick.com
Arthur L. Shingler ashingler@scott-scott.com
Benjamin Patrick Smith bpsmith@morganlewis.com
Christopher J. Banks cbanks@morganlewis.com
Christopher Martin Wood cwood@csgrr.com
David Allen Priebe david.priebe@dlapiper.com
David R. Scott drscott@scott-scott.com
Dean S. Kristy dkristy@fenwick.com
Denise V. Zamore dzamore@scott-scott.com
Emily Victoria Griffen egriffen@shearman.com
Felicia Gross felicia@ramsey-ehrlich.com
Geoffrey M. Johnson gjohnson@scott-scott.com
Ismail Jomo Ramsey izzy@ramsey-ehrlich.com
James Elliot Lyons jlyons@skadden.com
Jeffrey Bruce Coopersmith jeff.coopersmith@dlapiper.com
Jonathan B. Gaskin jgaskin@orrick.com
Joseph Edward Floren jfloren@morganlewis.com
Joseph Edward Floren jfloren@morganlewis.com
Kevin Peter Muck kmuck@fenwick.com
Lanelle Kay Meidan lanelle.meidan@skadden.com
Leigh Anne Parker lparker@wllawca.com
Liwen Arius Mah lmah@fenwick.com
Matthew S. Weiler mweiler@morganlewis.com
Michael J. Shepard mshepard@hewm.com
Michael Todd Scott tscott@orrick.com
Miles F. Ehrlich miles@ramsey-ehrlich.com
Nicole Catherine Lavallee nlavallee@bermanesq.com
Patrick David Robbins probbins@shearman.com
Paul F. Bennett pfb@gbcslaw.com
Robert P. Varian rvarian@orrick.com
Shawn A. Williams shawnw@csgrr.com
Shawn A. Williams shawnw@csgrr.com
Shirli Fabbri Weiss shirli.weiss@dlapiper.com
Steve Shea Kaufhold skaufhold@akingump.com
Tera Marie Heintz theintz@morganlewis.com
Thomas R. Green tgreen@morganlewis.com
Thomas Samuel Kimbrell thomas.kimbrell@hellerehrman.com
Timothy Alan Miller tmiller@skadden.com
Travis E. Downs travisd@csgrr.com
Walter F. Brown wbrown@orrick.com
Warrington S. Parker wparker@orrick.com

**Dated: December 11, 2008**                              **Richard W. Wieking, Clerk**

                                                          **By:   /s/ JW Chambers**
                                                                **Elizabeth Garcia**
                                                                **Courtroom Deputy**

**United States District Court**
For the Northern District of California