ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS (213113)
CHRISTOPHER M. WOOD (254908)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
swilliams@rgrdlaw.com
cwood@rgrdlaw.com
    – and –
TRAVIS E. DOWNS III (148274)
JEFFREY D. LIGHT (159515)
BENNY C. GOODMAN III (211302)
LUCAS F. OLTS (234843)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
travisd@rgrdlaw.com
jeffl@rgrdlaw.com
bgoodman@rgrdlaw.com
lolts@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re KLA-TENCOR CORP. SHAREHOLDER DERIVATIVE LITIGATION | No. C-06-03445-JW |
| This Document Relates To: | NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | DATE:        May 24, 2010<br>TIME:        9:00 a.m.<br>COURTROOM:    The Honorable<br>                    James Ware |

520786_1

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................1

II.   OVERVIEW OF THE LITIGATION .................................................4

    A.    Initiation of the Action...............................................................4

    B.    The Restatement..........................................................................5

    C.    The SLC's Termination Motion...................................................6

    D.    Settlement Negotiations ..............................................................7

III.  THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT.....................................................................7

IV.  THE SETTLEMENT IS AN EXCELLENT RESULT FOR KLA AND SHOULD BE APPROVED ...................................................9

    A.    The Risks of Establishing Liability.............................................11

    B.    The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of the Parties' Respective Positions...................................................14

    C.    The Complexity, Expense, and Duration of Continued Litigation ........................15

    D.    The Experience and Views of Counsel Favor Approval ......................................16

V.   THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED ................................................17

VI.  CONCLUSION.................................................................................20

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW    - i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3 | CASES

4

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) .................................................................12, 13

5

6

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ..............................................14

7

*City of Pontiac Gen. Employees' Ret. Sys. v. Langone,*
    No. 2006-cv-122302, slip op. (Fulton County Ga. June 10, 2008) ..................18

8

9

*Cohn v. Nelson,*
    375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................7, 15, 16

10

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)..........................................................8

11

12

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ..................8

13

14

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975).......................................................11, 14

15

16

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).............................................................17

17

*In re Activision, Inc. S'holder Derivative Litig.,*
    No. CV-06-04771-MRP (JTLx), slip op. (C.D. Cal. July 21, 2008) ........................2, 9, 18

18

19

*In re AOL Time Warner S'holder Derivative Litig.,*
    No. 02 Civ. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ..................8

20

*In re Apollo Group, Inc. Sec. Litig.,*
    No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
    (D. Ariz. Aug. 4, 2008)..........................................................13

21

22

*In re BP P.L.C. Derivative Litig.,*
    No. 3AN-06-11929CI, slip op.
    (3d Judicial Dist. Anchorage, Alaska, May 7, 2008)................................18

23

24

*In re Juniper Derivative Actions,*
    No. 5:06-cv-03396-JW, slip op. (N.D. Cal. Nov. 13, 2008)................................2, 9, 18

25

26

*In re McAfee, Inc. Derivative Litig.,*
    No. 5:06-cv-03484-JF, slip op. (N.D. Cal. Feb. 2, 2009) ........................2, 9, 18

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW

                                                                                    **Page**

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................14, 15

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973
    (N.D. Cal. Mar. 18, 2009)........................................................................*passim*

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA(JCS), slip op. (N.D. Cal. Dec. 22, 2008).......................11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................12, 15

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)....................12, 13

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).....................................................................18

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ...................................................................11, 19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).............................................................................18, 19

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................*passim*

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................8

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246
    (D.N.J. Oct. 28, 2005).............................................................................11, 19


**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23.1 .....................................................................................................7
    Rule 23.1(c).................................................................................................8

1

2                                                                                      **Page**

3   **SECONDARY AUTHORITIES**

4   Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,*
    *2008 Review and Analysis* (Cornerstone Research 2008).................................................2
5

6   *Investor Opinion Survey on Corporate Governance* (McKinsey & Company
    June 2000).............................................................................................................10

7   Ralph C. Ferrara, Kevin T. Abikoff, Laura Leedy Gansler,
8   *Shareholder Derivative Litigation: Besieging the Board*
            §14.06.........................................................................................................19
9
    Stephanie Plancich, Ph.D., Svetlana Starykh, *Recent Trends in Securities*
10  *Class Action Litigation:2009 Year-End Update* (NERA Dec. 2009).............................2

11  Zusha Elinson, *After Delays, KLA Backdating Suit Settles,*
12  The Recorder (Mar. 10, 2010) ......................................................................................3

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT    - iv -
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF  - C-06-03445-JW

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on May 24, 2010, at 9:00 a.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Alaska Electrical Pension Fund ("Plaintiff") will move the Honorable James Ware, United States District Judge, at the Robert F. Peckham Federal Building and United States Courthouse, 280 South First Street, Courtroom 8, San Jose, California, to grant final approval of the proposed Settlement in the *In re KLA-Tencor Corp. Shareholder Derivative Litigation* on the terms set forth in the Stipulation of Settlement dated March 15, 2010 ("Stipulation" or "Settlement"), which was previously filed with the Court. The Settlement resolves the derivative claims pending in this Court and the derivative actions pending in the California and Delaware state courts (together "State Actions"). Subject to this Court's approval of the proposed Settlement, the plaintiffs in the State Actions have agreed to voluntarily dismiss those actions with prejudice, subject to the terms and conditions of the Stipulation.

The Motion is based on the attached Memorandum of Points and Authorities in Support of Motion for Final Approval of Derivative Settlement ("Memorandum"), the Stipulation, the declarations of the Honorable Layn R. Phillips, Professor Jesse M. Fried, Jeffrey D. Light, and the Joint Declaration of Shawn A. Williams and Travis E. Downs III, and such additional evidence or argument as may be required by the Court.

## I.    INTRODUCTION

This Memorandum is submitted in support of final approval of the settlement of the derivative claims brought on behalf of KLA-Tencor Corporation ("KLA" or the "Company") against certain of its officers and directors.[1] The Settlement represents an excellent recovery for the Company and is the product of Plaintiff's extensive investigation, prosecution and arm's-length negotiations with KLA, by and through its independent Litigation Committee of the KLA Board of Directors ("Litigation Committee"), and the Settling Defendants, with the assistance of the Honorable Layn R. Phillips, a highly respected former Judge who has extensive experience in the

---

[1]    All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation.

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW                    - 1 -

1   mediation of complex shareholder and securities litigation.  *See* paragraphs 2-3 to the Declaration of

2   Layn R. Phillips in Support of Approval of Derivative Settlement ("Phillips Decl."), submitted

3   herewith.

4           As a result of Plaintiff's efforts, KLA, on whose behalf the Action was brought, will receive

5   substantial financial benefits as well as significant corporate governance reforms which will benefit

6   KLA and its shareholders for years to come.  First, the Settlement provides for a $42.6 million

7   financial benefit to KLA, consisting of $33.2 million in cash payments and the cancellation,

8   forfeiture, and repricing of 550,853 KLA stock options as well as the relinquishment of

9   compensation and other benefits with a value of approximately $9.4 million.  *See* Stipulation, §IV.B.

10          The $42.6 million in financial benefits to KLA equals more than 11.5% of the $370 million

11  restatement charge, and more than 24.1% of the $176.3 million of harm suffered by KLA from

12  exercised mispriced options.   This recovery far exceeds the average recovery in shareholder

13  litigation.  *See* Stephanie Plancich, Ph.D., Svetlana Starykh, *Recent Trends in Securities Class*

14  *Action Litigation: 2009 Year-End Update*, at 20 (NERA Dec. 2009) (median ratio of settlements to

15  investor losses in 2009 was 2.5%); Ellen M. Ryan, Laura E. Simmons, *Securities Class Action*

16  *Settlements, 2008 Review and Analysis*, at 6 (Cornerstone Research 2008) (settlements as a

17  percentage of "estimated damages" averaged 3.2% in 2008).

18          The recovery for KLA also compares favorably to settlements in other large derivative stock

19  option backdating cases pending within the Northern District and elsewhere.  *See, e.g., In re McAfee,*

20  *Inc. Derivative Litig.*, No. 5:06-cv-03484-JF, slip op. (N.D. Cal. Feb. 2, 2009) ("*McAfee* Final

21  Judgment") (granting final approval of $30 million settlement consisting of stock option cancellation

22  and corporate governance enhancements); *In re Activision, Inc. S'holder Derivative Litig.*, No. CV-

23  06-04771-MRP (JTLx), slip op. (C.D. Cal. July 21, 2008) (granting final approval of $24.3 million

24  settlement consisting of cash, stock option repricing and cancellation and corporate governance

25  enhancements) ("*Activision* Final Judgment"); *In re Juniper Derivative Actions*, No. 5:06-cv-03396-

26  JW, slip op. (N.D. Cal. Nov. 13, 2008) ("*Juniper* Final Judgment") (granting final approval of $22.7

27  million settlement consisting of stock option repricing and cancellation and corporate governance

28  enhancements); *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2009 U.S. Dist.

1   LEXIS 24973, at *11 (N.D. Cal. Mar. 18, 2009) (“*NVIDIA* Final Judgment”) (granting final approval

2   of $15.8 million settlement consisting of cash, stock option repricing and cancellation and corporate

3   governance enhancements). *See* accompanying Declaration of Jeffrey D. Light in Support of Motion

4   for Final Approval of Derivative Settlement (“Light Decl.”), Exs. 1-4. As one legal commentator

5   observed, “[t]he cash payment in the [KLA] derivative settlement is on the high side. Backdating

6   poster-child Brocade got a total of $23 million in cash. . . .” Zusha Elinson, *After Delays, KLA*

7   *Backdating Suit Settles*, The Recorder, Mar. 10, 2010. Light Decl., Ex. 5.

8          Second, the Settlement also provides for a series of significant corporate governance reforms

9   that confer additional substantial benefits upon KLA. *See* the accompanying Declaration of

10  Professor Jesse M. Fried in Support of Derivative Settlement (“Fried Decl.”) at 1 (“[M]y opinion is

11  that these reforms do provide substantial benefits to KLA-Tencor and its shareholders.”).[2]  These

12  reform measures are not only specifically designed to address the governance shortcomings that

13  contributed to the climate that gave rise to the option backdating alleged in the Action, but will also

14  significantly strengthen KLA’s corporate governance practices and internal controls generally, and

15  provide substantial and lasting value to KLA and its shareholders. For example, the corporate

16  governance reforms measures establish proper procedures for the granting of stock options (which

17  are directly responsive to the allegations of backdated options at KLA) and other mechanisms

18  designed to ensure that such conduct does not happen again. In addition, the Settlement provides for

19  enhanced internal controls, a policy regarding forfeiture of bonuses and profits from stock sales (a

20  compensation “clawback” provision), and shareholder participation in the nomination of directors.

21  *See* Appendix 1 to Stipulation.

22         These corporate governance enhancements confer a substantial benefit upon KLA, and will

23  provide that value to its shareholders for years to come. *Id.* As Harvard Law Professor Jesse M.

24  Fried opines: “[T]he reforms will confer a substantial benefit by (1) reducing the likelihood that

25  _____

26  [2]      Professor Fried is a Professor of Law at Harvard Law School. Before joining Harvard’s

27  faculty, he was a Professor of Law at UC Berkeley School of Law. Professor Fried specializes in the
fields of corporate governance and executive compensation. Fried Decl., ¶¶1-4.

28

520786_1
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW          - 3 -

1    executives' and other employees' stock option grants will be backdated in the future, (2) reducing

2    the likelihood that the company's executives will manipulate earnings in the future, and (3) even

3    more importantly, making the company's board a more effective representative of public

4    shareholders." Fried Decl., ¶7.

5        In recognition of the substantial benefits bestowed upon the Company and its shareholders,

6    KLA, acting by and through its independent Litigation Committee, has agreed to pay $8 million in

7    cash in addition to shares of KLA common stock with a value of $8 million for Plaintiffs' Counsel's

8    attorneys' fees and expenses.  Counsel for Plaintiff and KLA, with the assistance of Judge Phillips,

9    agreed to the attorneys' fee and expense provision after the principal terms of the Settlement were

10   agreed upon.  *See* Phillips Decl., ¶¶5-7.  After extensive negotiations, it was Judge Phillips who

11   ultimately "recommended an amount of attorneys' fee and expenses to be paid to plaintiff's counsel

12   in the Action and the parties separately accepted [his] recommendation."  *Id.*, ¶7.

13       The Settlement, including the negotiated fee, is firmly supported by the independent

14   Litigation Committee of KLA's Board of Directors ("Board").  As stated by KLA in its Joinder in

15   this Motion for Final Approval of Derivative Settlement, "[t]he Company, by and through its

16   independent Litigation Committee, has considered each aspect of the settlement in its business

17   judgment, including the financial benefits, governance reforms, releases, and provisions for

18   Plaintiff's Counsel's attorneys' fees, and without reservation recommends final approval of the

19   settlement in its entirety."  KLA-Tencor Corporation's Joinder in Motion for Final Approval of

20   Settlement of Derivative Action ("Joinder") at 5; *see also* Stipulation, §I at 3.

21       For the reasons set forth herein, and given the excellent result obtained for KLA, Plaintiff

22   respectfully submits that the Court should approve the Settlement, including the fee and expense

23   amount negotiated between the parties.

24   **II.    OVERVIEW OF THE LITIGATION**

25       **A.    Initiation of the Action**

26       On May 22, 2006, the first shareholder derivative complaint on behalf of KLA against certain

27   of its current and former directors and officers for allegedly backdating stock option grants to KLA

28   insiders was filed in the United States District Court for the Northern District of California, San Jose

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW          - 4 -

1   Division. *See Theodore R. Kornreich Revocable Trust v. Barnholt*, No. 5:06-cv-3345-JW (N.D.

2   Cal.). Shortly thereafter, additional actions were filed in this Court containing similar allegations.

3   *See Ziolkowski v. Levy, et al.*, No. 5:06-cv-3445-JW; *Ziering v. Levy, et al.*, No. 5:06-cv-3512-JW;

4   and *Alaska Electrical Pension Plan v. Levy, et al.*, No. 5:06-cv-4002-JW. On October 23, 2006, the

5   Court issued an order (the "Consolidation Order") consolidating the federal derivative cases into the

6   Action, appointing Alaska Electrical Pension Fund as lead plaintiff and Robbins Geller Rudman &

7   Dowd LLP, formerly known as Coughlin Stoia Geller Rudman & Robbins LLP, as lead counsel.

8   **B.    The Restatement**

9          On September 28, 2006, KLA disclosed that it would need to restate its previously issued

10   financial statements for the period July 1, 1997 to June 30, 2002, to record additional non-cash

11   charges for stock-based compensation expense related to past stock options. The Company also

12   disclosed that its previously issued financial statements and earnings press releases should no longer

13   be relied upon.    Subsequently, KLA disclosed that it had recorded a non-cash charge of

14   approximately $370 million to correct errors in the accounting for stock-based compensation.

15          On December 22, 2006, Plaintiff filed an amended Consolidated Verified Shareholder

16   Derivative Complaint for Violation of the Federal Securities Laws and State Law Claims for Breach

17   of Fiduciary Duty, Abuse of Control, Constructive Fraud, Corporate Waste, Unjust Enrichment,

18   Gross Mismanagement, Action for Accounting and Violation of California Corporations Code. On

19   February 20, 2007, Plaintiff filed a second amended complaint (the "Complaint"). The Complaint

20   asserted claims relating to the alleged backdating and retroactive pricing of stock option grant

21   awards and the issuance of false and misleading proxy statements and other SEC reports designed to

22   conceal such backdating from shareholders against certain KLA directors and officers.    The

23   Complaint also sought damages and injunctive relief against the defendants, including the return of

24   the unjust benefits obtained by the defendants via the receipt of mispriced options.

25          Neither KLA nor the defendants answered the Complaint but instead KLA requested, and

26   Plaintiff agreed to, a stipulation staying the action to allow KLA's Special Litigation Committee

27

28

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW               - 5 -

1    ("SLC") to conduct its investigation.[3]   On March 10, 2008, KLA filed a case management

2    conference statement informing the Court that the SLC intended to file a Motion to Terminate the

3    derivative litigation (the "Termination Motion") on March 14, 2008, and proposing a briefing

4    schedule for the Termination Motion.

5         **C.      The SLC's Termination Motion**

6         On March 25, 2008, the SLC filed its Termination Motion.  Thereafter, Plaintiff conducted

7    discovery regarding the Termination Motion, including the depositions of the members of the SLC.

8    On July 21, 2008, Plaintiff filed a lengthy written opposition to the Termination Motion.  On August

9    25, 2008, the SLC filed its reply in support of the Termination Motion.  The Court heard oral

10   argument on the Termination Motion on October 6, 2008.

11        On December 12, 2008, the Court denied the SLC's Termination Motion ("Termination

12   Order").  On January 9, 2009, the SLC filed a Notice of Appeal with the Court of Appeals for the

13   Ninth Circuit ("Ninth Circuit").  The SLC appealed the Court's December 12, 2008 Termination

14   Order, both by way of a direct appeal and a petition for mandamus, which Plaintiff opposed.

15        On May 8, 2009, the Ninth Circuit dismissed the SLC's direct appeal.  On July 10, 2009, the

16   Ninth Circuit denied the SLC's petition for a writ of mandamus.  Following the dismissal of the

17   SLC's appeal and denial of its petition for writ of mandate to the Ninth Circuit, the KLA Board of

18   Directors dissolved the SLC and withdrew its authority with respect to the Action.

19        Upon the dissolution of the SLC, in August 2009, the KLA Board of Directors appointed a

20   Litigation Committee of the Board composed of three independent directors, each of whom first

21   became directors of KLA in 2007, after the events at issue in and filing of the Action.  The members

22   of the Litigation Committee are Robert M. Calderoni, John T. Dickson, and Kevin J. Kennedy.

23   None of the members of the Litigation Committee was a member of KLA's former SLC.  Since its

24   formation, the Litigation Committee has been closely involved in the Action, including, without

25   limitation, the negotiations leading to the proposed Settlement reflected herein.

26   _____

27   [3]      After the commencement of the Action, the KLA Board of Directors created the SLC and
     authorized it to investigate and to determine the Company's position with respect to the Action.

28

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW           - 6 -

### D.   Settlement Negotiations

Following the denial of the SLC's Termination Motion, between February 27, 2009 and November 19, 2009, representatives for all of the parties to the Action engaged in a formal mediation process before Judge Phillips. Some or all of the parties participated in all-day, in-person mediation sessions on February 27, 2009 in San Francisco, on March 26, 2009 in Newport Beach, on October 14, 2009 in New York City, and on November 19, 2009 in Palo Alto and San Francisco. Additional mediation discussions between various parties took place between and after the in-person mediation sessions. These negotiations included the amount of financial contributions by defendants, as well as a number of valuable corporate governance reforms. *See* Joint Declaration of Shawn A. Williams and Travis E. Downs III in Support of Motion for Final Approval of Derivative Settlement ("Joint Decl."), ¶37, submitted herewith; Phillips Decl., ¶¶5-6.

The mediations and settlement negotiations led to an agreement-in-principle among most of the parties, of which Plaintiff and KLA informed the Court on January 15, 2010. Thereafter, through additional negotiations among Plaintiff, the Settling Defendants, and KLA, by and through its independent Litigation Committee, the Settling Parties reached an agreement-in-principle for the resolution of the Action in its entirety as to all parties. On March 5, 2010, KLA's Litigation Committee, in its business judgment, unanimously approved the Settlement and each of its terms, as set forth in the Stipulation, as in the best interest of KLA and its shareholders. Joinder at 5; Stipulation, §I at 3.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *NVIDIA* Final Judgment, 2009 U.S. Dist. LEXIS 24973, at *6 (Light Decl., Ex. 4). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. Under Rule 23.1, a derivative action "may be settled,

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW          - 7 -

voluntarily dismissed, or compromised only with the court's approval.  Notice of a proposed

settlement, voluntary dismissal, or compromise must be given to shareholders or members in the

manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of

a class action settlement, some of which are applicable to a derivative settlement:

> The district court's ultimate determination will necessarily involve a balancing of
> several factors which may include, among others, some or all of the following: the
> strength of plaintiffs' case; the risk, expense, complexity, and likely duration of
> further litigation; the risk of maintaining class action status throughout the trial; the
> amount offered in settlement; the extent of discovery completed, and the stage of the
> proceedings; the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Accord Torrisi v.*

*Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  The Ninth Circuit, however, has

cautioned that:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for
> trial on the merits.  Neither the trial court nor this court is to reach any ultimate
> conclusions on the contested issues of fact and law which underlie the merits of the
> dispute, for it is the very uncertainty of outcome in litigation and avoidance of
> wasteful and expensive litigation that induce consensual settlements.  The proposed
> settlement is not to be judged against a hypothetical or speculative measure of what
> **might** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original).

The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval*

*Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

8 F.3d at 1375.  Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise

a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see*

*also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302(SWK), 2006 WL

2572114, at *3 (S.D.N.Y. Sept. 6, 2006) ("'a court-appointed mediator's involvement in . . .

settlement negotiations helps ensure that the proceedings were free of collusion and undue

pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

IV.    **THE SETTLEMENT IS AN EXCELLENT RESULT FOR KLA AND SHOULD BE APPROVED**

As a result of settlement negotiations among counsel for the Plaintiff, KLA, by and through its Litigation Committee, and the Settling Defendants, with the assistance of Judge Phillips, the Settling Parties have agreed to a resolution that provides substantial benefits to KLA and its shareholders. The Settlement is comprised of several elements, each of which provides a substantial benefit to KLA, on whose behalf the Action was brought. First, the Settlement provides a $42.6 million financial benefit to KLA, consisting of $33.2 million in cash payments, the cancellation, forfeiture, and repricing of 550,853 KLA stock options, as well as, the relinquishment of compensation and other benefits with a value of approximately $9.4 million. *See* Stipulation, §IV.B

As noted above, the financial recovery alone far exceeds the average recovery in shareholder litigation. *See supra* p.2. The financial recovery for KLA also exceeds the recoveries in other large derivative stock option backdating cases pending within the Northern District and elsewhere. For example, in *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS) (N.D. Cal.), Judge Saundra Brown Armstrong approved a settlement that included $15.8 million in financial benefits and extensive corporate governance relief. In *In re Juniper Derivative Actions*, No. 5:06-cv-03396-JW (N.D. Cal.), Your Honor approved a settlement that included $22.7 million in financial benefits and extensive corporate governance enhancements. In *In re Activision, Inc. S'holder Derivative Litig.*, No. CV-06-04771-MRP(JTLx) (C.D. Cal.), Judge Mariana R. Pfaelzer of the Central District of California approved a settlement that included $24.3 million in financial benefits and extensive corporate governance reforms. And, in *In re McAfee, Inc. Derivative Litig.*, No. 5:06-cv-03484-JF (N.D. Cal.), Judge Jeremy Fogel approved a stock option backdating settlement that included $30 million in financial benefits to the corporation and extensive corporate governance relief.

In addition, the Settlement provides that KLA will implement and maintain for four years significant corporate governance and internal control measures that the parties believe will increase the value of KLA. Several of the corporate governance reforms obtained here are regularly sought by shareholders whose requests are usually denied. A number of these corporate governance measures are substantial procedural reforms relating to stock option granting which will prevent the

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW            - 9 -

1   recurrence of the type of conduct alleged in the Action.  These corporate governance reforms

2   "benefits KLA-Tencor and its shareholders by reducing executives' ability to secretly divert value

3   from the company [through option grant backdating]."  Fried Decl., ¶23.

4         Plaintiff also secured significant governance reforms which will give KLA directors greater

5   incentive and ability to represent public shareholders' interests.  These governance reforms yield

6   positive changes in many areas of KLA's operations and create long-lasting effects on KLA that go

7   far beyond its option granting practices.  Fried Decl., ¶¶23, 33, 36.  For example, the adoption of a

8   compensation "clawback" provision reduces the likelihood that KLA executives will manipulate

9   earnings, and the enactment of a procedure for obtaining input about director nominations from large

10   outside shareholders, makes it easier for large shareholders to influence the composition of the Board

11   of Directors by creating a regular channel of communication between the Board of Directors and

12   large shareholders.  As Professor Fried opines:

13           [T]he reforms will confer a substantial benefit by (1) reducing the likelihood that
          executives' and other employees' stock option grants will be backdated in the future,
14           (2) reducing the likelihood that the company's executives will manipulate earnings in
          the future, and (3) even more importantly, making the company's board a more
15           effective representative of public shareholders.

16   Fried Decl., ¶7.[4]

17         Therefore, Plaintiff not only resolved the stock option backdating issues at KLA, but also

18   obtained significant reforms which leave KLA as a better governed company with stronger internal

19   controls and greater independent oversight.  As Judge Armstrong recently found when granting

20   preliminary approval in the *NVIDIA* derivative backdating settlement, "[a]s corporate debacles such

21   as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the

22   economic well-being and success of a corporation.  Indeed, 'Courts have recognized that corporate

23   ——————————————

24   [4]     Corporate governance improvements are regularly sought by institutional investors in
25   connection with the prosecution and/or resolution of shareholder litigation.  The implementation of
    strong corporate governance practices is perceived by sophisticated institutional investors to
26   substantially enhance the value of corporations which adopt such practices.  The end result is that the
    adoption of such improvements often yields substantially increased market capitalization for the
27   companies implementing them.  *See generally Investor Opinion Survey on Corporate Governance*
    (McKinsey & Company June 2000) [www.oecd.org/dataoecd/56/7/1922101.pdf].

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW     - 10 -

1  governance reforms such as those achieved here provide valuable benefits to public companies.'" *In*

2  *re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), slip op. at 4 (N.D. Cal. Dec. 22,

3  2008) (citation omitted) (Light Decl., Ex. 6). *Accord Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-

4  3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) (court in approving

5  settlement recognized "the great benefit conferred upon [the company] as a result of the new

6  corporate governance principles provided for in settlement agreement" that "will serve to prevent

7  and protect [the company] from the reoccurrence of certain alleged wrongdoings").

8      Significantly, if litigation continued KLA's recovery at trial would be limited to monetary

9  damages or equitable relief, therefore foreclosing Plaintiff's ability to seek the corporate reforms

10  obtained here.  The corporate governance reforms may, in fact, be more valuable to the Company

11  and its shareholders than any potential monetary award or equitable relief obtained after trial, post-

12  trial motions, and appeals. *See Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("effects

13  of the suit on the functioning of the corporation may have a substantially greater economic impact on

14  it, both long- and short-term, than the dollar amount of any likely judgment").

15      The Settlement's substantial governance reforms permit KLA not only to offer more

16  transparency to shareholders, but also will help the Company avoid future litigation.  Further, the

17  financial benefits to the Company are highly significant and represent one of the largest cash

18  recoveries in a stock option backdating action in this District to date.  Together, the governance

19  reforms and financial benefits achieved through the Action are substantial and will provide ongoing

20  benefits to the Company for years after the Settlement is approved.  In sum, the Settlement confers

21  substantial benefits upon KLA and is an excellent resolution for KLA of a case of substantial

22  complexity and costs.

23      **A.      The Risks of Establishing Liability**

24      In assessing the fairness, reasonableness, and adequacy of the settlement, a court should

25  balance the benefits of the settlement against the continuing risks of litigation. *Girsh v. Jepson*, 521

26  F.2d 153, 157 (3d Cir. 1975); *see also Officers for Justice*, 688 F.2d at 625.  There is no question

27  that derivative actions are complex and fraught with risk.  Indeed, the Ninth Circuit, in affirming the

28  district court's approval of a settlement of a derivative action, noted that "the odds of winning [a]

1    derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re*

2    *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also NVIDIA* Final Judgment, 2009

3    U.S. Dist. LEXIS 24973, at *17 (Light Decl., Ex. 4). This case was no different. As Judge Phillips

4    notes: "the settlement reached represents a considered judgment by plaintiff's counsel, who are

5    among the most capable and experienced lawyers in the country, and who took on a risky and

6    complicated case requiring years of effort, that the proposed settlement is not only fair and

7    reasonable, but an excellent result for KLA." Phillips Decl., ¶6.

8         Although Plaintiff believes that the claims asserted in the Action were meritorious, liability

9    was by no means assured. Had Plaintiff continued to litigate, there was a risk that Plaintiff would

10   not have been successful on the motion to dismiss for failure to state a claim for relief under the

11   federal securities and/or state corporation laws, and other pre-trial motions that individual Settling

12   Defendants would have filed designed to eliminate or curtail the claims.

13        Even if Plaintiff was successful and survived the likely individualized motions to dismiss,

14   continued litigation would be extremely complex, costly, and of substantial duration. Document

15   discovery would need to be completed, depositions would need to be taken, experts would need to be

16   designated, and expert discovery conducted. The Settling Defendants' expected motions for

17   summary judgment would have to be briefed and argued and a trial would have to be held. Indeed,

18   significant risks remained in getting past the Settling Defendants' anticipated motions for summary

19   judgment and obtaining a favorable judgment after trial.

20        Further, to prevail at trial, Plaintiff would have had to overcome the potential arguments that

21   the protections afforded the Settling Defendants under the so-called "business judgment rule"

22   applied. Undoubtedly, the Settling Defendants would have sought the application of the business

23   judgment rule's protections with respect to many of the acts challenged by Plaintiff. *See Aronson v.*

24   *Lewis*, 473 A.2d 805, 811 (Del. 1984). Although referred to as a "rule," the idea of "business

25   judgment protection" for directors is more akin to a broad doctrine or concept, and it is perhaps, the

26   fundamental precept of corporate law. *See generally In re Walt Disney Co. Derivative Litig.*, 907

27   A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). While the business judgment rule (and

28   the protections it affords directors) has been articulated in slightly varied ways (and has taken varied

forms), it essentially stands for the proposition that there is a strong presumption that, in making a disinterested business decision, the directors of a corporation acted on an informed basis, in good faith, and with the honest belief that the action taken was in the best interests of the corporation. *Id.* at 746-47.[5]  *See also Aronson*, 473 A.2d at 812.  Plaintiff also faced the likelihood that the defendants would assert that KLA's certificate of incorporation contained exculpatory provisions which shielded them from potential liability.  While Plaintiff believed that it had strong arguments to overcome the protections afforded by the business judgment rule and KLA's liability raincoat provisions with respect to many of the acts challenged in the Action, the prospect that the Settling Defendants could have been shielded by these protective umbrellas made establishing liability in the Action uncertain.

Based upon the record and applicable law, it is therefore clear that there were serious risks in overcoming potential defenses and in establishing liability.  And even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation.  Thus, as opposed to the very real risk of no recovery at all for the Company, the Settlement guarantees an excellent result with $42.6 million in financial benefits to the Company and the implementation of valuable corporate governance enhancements that could not have been obtained if this Action proceeded to trial.  *See* Stipulation, §IV.B; Fried Decl. at 1.  Accordingly, the Settlement is likely the best possible result and more valuable to the Company and its shareholders than a judgment achieved after a successful trial.

Lastly, if Plaintiff was successful at trial there was no guarantee that the judgment would ultimately be sustained on appeal or by the trial court.  For example, in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of

---

[5]      Countless courts and too many commentators to list have discussed the concept of the business judgment rule and its implications, particularly in the wake of the well-publicized *Disney* decision.  A discussion of all of the iterations of the rule is not appropriate in this context, but Plaintiff respectfully refers the Court to the *Disney* decision (where judgment was entered for defendants on all claims after a 10-week bench trial) for an explanation of the rule's development and teachings.

520786_1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW          - 13 -

1   shareholders based on insufficient evidence presented at trial to establish loss causation.  Add to

2   these post-trial risks the difficulty and unpredictability of a lengthy and complex trial – where

3   witnesses could suddenly become unavailable or the fact-finder could react to the evidence in

4   unforeseen ways – and the benefits of the Settlement become all the more apparent.

**B.    The Settlement Was Negotiated by the Parties with a Thorough
Understanding of the Strengths and Weaknesses of the Parties'
Respective Positions**

7          The stage of the proceedings and the amount of discovery completed is another factor which

8   courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers*

9   *for Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-

10  17 (N.D. Cal. 1979).  Notwithstanding nearly four years since its commencement, the Settlement

11  comes at a relatively early stage in the proceedings, thus avoiding the potential for the expense of

12  protracted discovery and trial preparation, the cost of time and attention diverted from the day-to-day

13  business operations of the Company, and of course the burden to the Court of protracted and

14  complex litigation.  Ninth Circuit law is quite clear that """"formal discovery is not a necessary ticket

15  to the bargaining table" where the parties have sufficient information to make an informed decision

16  about settlement.'"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations

17  omitted).  Nevertheless, both the knowledge of Plaintiff's counsel and the proceedings themselves

18  have reached a stage where an intelligent evaluation of the Action and the propriety of settlement

19  can be made.

20         Before the filing of the first complaint and continuing thereafter, Plaintiff's counsel

21  conducted an extensive investigation of the allegations asserted in the Action.  Plaintiff's counsel

22  consulted with experts having specialized knowledge in the areas of options backdating, accounting

23  and corporate governance; reviewed and analyzed voluminous documents, including financial

24  reports, press releases, and SEC filings concerning KLA's stock option granting practices and other

25  accounting and financial reporting issues; and reviewed and analyzed thousands of pages of

26  documents regarding KLA's historical stock option granting practices that were produced by KLA in

27  connection with the SLC's Termination Motion.

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW                     - 14 -

1  In addition, "[t]he mediation process involved extensive analysis of the parties' positions

2  including the merits of plaintiff's stock option backdating claims, the individual defendants'

3  potential defenses, and the investigation by the Special Litigation Committee of KLA's Board of

4  Directors." Phillips Decl., ¶5.

5  Furthermore, Plaintiff's counsel is involved in many option backdating cases in this District

6  and across the country, and are intimately familiar with the legal and factual issues associated with

7  these claims. Because of their involvement in many cases with similar issues, Plaintiff's counsel not

8  only reviewed and analyzed KLA's option granting documents, but also have reviewed and analyzed

9  the internal option granting documents for many other companies. As a result, Plaintiff's counsel

10  was in an excellent position to analyze KLA's option granting practices in the context of similar

11  situations with other companies.

12  Here, Plaintiff's counsel's extensive investigation, which included the review of thousands of

13  pages of internal KLA documents, the arm's-length settlement discussions, as well as counsel's past

14  experience in litigating similar actions, provided Plaintiff not only with a clear picture of the

15  strengths and weaknesses of the Action, but also of the sufficiency of the legal and factual defenses

16  that the Settling Defendants would raise if litigation were to continue. Having enough information

17  to properly evaluate the claims and defenses to be asserted, Plaintiff has managed to resolve the

18  Action on a highly favorable basis to the Company and its shareholders without the substantial

19  expense, risk, delay, and uncertainty of continued litigation. Thus, the Settling Parties reached an

20  agreement to settle the Action at a point when they had an adequate understanding of the legal and

21  factual issues surrounding the case. *Mego Fin.*, 213 F.3d at 459.

22  **C.   The Complexity, Expense, and Duration of Continued Litigation**

23  Another factor militating in favor of the settlement is the complexity, expense, and likely

24  duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn*, 375 F. Supp. 2d at 859.

25  Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and

26  factual issues that can be litigated to a conclusion on the merits only at great expense over an

27  extended period of time. *Pac. Enters.*, 47 F.3d at 378 ("the odds of winning [a] derivative lawsuit

28  [are] extremely small" because "derivatively lawsuits are rarely successful"); *NVIDIA* Final

1   Judgment, 2009 U.S. Dist. LEXIS 24973, at *6-*7 (same) (Light Decl., Ex. 4); *Cohn*, 375 F. Supp.

2   2d at 852 ("'Settlements of shareholder derivative actions are particularly favored because such

3   litigation "is notoriously difficult and unpredictable."'").  The Action would not have been an

4   exception to this rule.

5        If not for this Settlement, the Action would have continued to be fiercely contested by the

6   parties.  The alleged wrongdoing took place beginning in the 1990s.  Discovering all of the relevant

7   documents and witnesses would have proved difficult.  Continued litigation would also be complex,

8   costly, and of substantial duration.  Although Plaintiff obtained substantial amounts of information

9   in connection with the SLC's Motion to Terminate the Action, formal document discovery would

10  need to be commenced and completed, depositions would have to be taken, experts would need to be

11  designated and expert discovery conducted, the individual defendants' expected motions for

12  summary judgment would have to be briefed and argued, and a trial could occupy attorneys on both

13  sides and the Court for weeks.  Moreover, any judgment favorable to Plaintiff would likely be the

14  subject of post-trial motions and appeal, which would prolong the case for years with the ultimate

15  outcome uncertain.

16       The Settlement provides immediate and substantial benefits to KLA and its shareholders and

17  avoids years of delay, added expense, and uncertainty.  A prolonged period of pretrial proceedings

18  and a lengthy and uncertain trial would not serve the interest of the Company and its shareholders in

19  light of the substantial benefits provided by the Settlement.  Thus, the prospect of continued

20  protracted expensive and uncertain litigation strongly supports approval of the Settlement.

21       **D.    The Experience and Views of Counsel Favor Approval**

22       Significant weight should be attributed to the belief of experienced counsel that settlement is

23  in the best interest of those affected by the settlement – here, KLA. *Officers for Justice*, 688 F.2d at

24  625.  Plaintiff and KLA, by and through its independent Litigation Committee, and the counsel for

25  each, have independently considered the Settlement and all agree that it is in the best interest of KLA

26  and its shareholders.  Joint Decl., ¶¶61, 64; Joinder at 5; Stipulation, §I at 3.

27       Here, counsel for Plaintiff not only have extensive experience in the area of shareholder

28  representative litigation but have been at the forefront of investigating stock option abuses and are

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW            - 16 -

involved in the prosecution of numerous actions on behalf of shareholders alleging stock option abuses in courts nationwide. As a result of counsel's unparalleled experience in these types of cases, counsel for Plaintiff has a unique insight into the legal and factual issues presented. Counsel used that expertise and experience to effectively and efficiently prosecute the Action and reach an excellent result for KLA and its shareholders. As Judge Phillips explains: "There is no question in my mind that the settlement reached represents a considered judgment by plaintiff's counsel, who are among the most capable and experienced lawyers in the country, and who took on a risky and complicated case requiring years of effort, that the proposed settlement is not only fair and reasonable, but an excellent result for KLA." Phillips Decl., ¶6.

## V.   THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

Plaintiff's counsel's efforts in prosecuting the Action on behalf of the Company and negotiating the Settlement have conferred $42.6 million in financial benefits and valuable corporate governance reforms upon KLA. In recognition of these substantial benefits, KLA, acting by and through its independent Litigation Committee, has agreed to pay $8 million in cash in addition to shares of KLA common stock with a value of $8 million for Plaintiffs' Counsel's attorneys' fees and expenses. Stipulation, §IV.E. Plaintiff's counsel and KLA agreed to such an amount only after the principal terms of the Settlement were agreed upon. After extensive negotiations between these parties, it was Judge Phillips who "recommended an amount of attorneys' fee and expenses to be paid to plaintiff's counsel in the Action and the parties separately accepted [his] recommendation." Phillips Decl., ¶7. As Judge Phillips states, "I believe that the agreed attorneys' fee and expenses amount was negotiated by the parties in good faith, is fair and reasonable in light of the substantial benefits conferred upon KLA, and consistent with fee provisions in similar complex, large shareholder derivative stock option backdating settlements." *Id.*, ¶7.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." As the Ninth

1   Circuit has stated: "[T]he court's intrusion upon what is otherwise a private consensual agreement

2   negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

3   reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

4   between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

5   adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.[6]

6         Here, counsel for Plaintiff and KLA, by and through its independent Litigation Committee,

7   agreed to the attorneys' fees and expenses to be paid to Plaintiffs' Counsel after the principal terms

8   of the Settlement were agreed upon. Phillips Decl., ¶7. Judge Phillips oversaw these arm's-length

9   negotiations, which resulted in a fee and expense provision that recognizes the substantial benefits

10  obtained for KLA and its shareholders and is within the range of agreed fees paid in other derivative

11  cases. *See, e.g.*, *McAfee* Final Judgment, slip op. at 2 (awarding $13.75 million fee in connection

12  with $30 million backdating derivative settlement); *Activision* Final Judgment, slip op. at 3

13  (awarding $10.75 million fee in connection with $24.3 million backdating derivative settlement);

14  *Juniper* Final Judgment, slip op. at 4 (awarding $9 million in fees in connection with the $22.7

15  million backdating derivative settlement); *NVIDIA* Final Judgment, 2009 U.S. Dist. LEXIS 24973, at

16  *11-*14 (awarding $7.25 million in fees in connection with $15.8 million backdating derivative

17  settlement). Light Decl., Exs. 1-4.[7]

18        Moreover, under the "substantial benefit" doctrine, counsel who prosecute a shareholders'

19  derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees

20  and costs. *NVIDIA* Final Judgment, 2009 U.S. Dist. LEXIS 24973, at *12 (Light Decl., Ex. 4). In

21  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court stated that "an

---

22

23  [6]     Where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D.

24  685, 695 (N.D. Ga. 2001).

25  [7]    *See also City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122302, slip op. at 5 (Fulton County Ga. June 10, 2008) (awarding $14.5 million in fees in connection with

26  corporate governance stock option backdating settlement); *In re BP P.L.C. Derivative Litig.*, No. 3AN-06-11929CI, slip op. (3d Judicial Dist. Anchorage, Alaska, May 7, 2008) (awarding $12.1

27  million in fees and expenses in connection with corporate governance settlement). Light Decl., Exs. 7-8.

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW     - 18 -

increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id.*, at 395, 396 (citations omitted); *Unite Nat'l*, 2005 U.S. Dist. LEXIS 26246, at *18 (awarding $9.2 million based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement"); *see also* Ralph C. Ferrara, Kevin T. Abikoff, Laura Leedy Gansler, *Shareholder Derivative Litigation: Besieging the Board* §14.06, at 14-25 to 14-26 (Law Journal Press 2003).

In this case, there is no question that the financial benefits and corporate governance reforms achieved as a result of Plaintiff's prosecution and settlement of this Action provide substantial benefits to KLA and its shareholders. Phillips Decl., ¶6; Fried Decl., ¶¶7, 23, 33, 43. The financial recovery of $42.6 million for KLA is on the high side for derivative stock option backdating settlements. *See* Light Decl., Ex. 5. The extensive corporate governance reforms are equally, if not more, valuable to KLA. *See Maher*, 714 F.2d at 461 ("effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment"). These corporate governance measures will not only reduce the chance of the improprieties alleged by Plaintiff occurring in the future, but also will make directors more effective representatives of shareholders, thus providing additional substantial benefits and value to KLA and its shareholders. Fried Decl., ¶¶7, 23, 33.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW

1    **VI.    CONCLUSION**

2            The Settlement achieved represents an excellent result for KLA and its shareholders and

3    constitutes one of the strongest and most comprehensive settlements of its kind to date.

4    Accordingly, Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and

5    should be approved by the Court.

6    DATED: April 26, 2010                    ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
7                                            SHAWN A. WILLIAMS
                                             CHRISTOPHER M. WOOD
8                                            100 Pine Street, Suite 2600
                                             San Francisco, CA  94111
9                                            Telephone:  415/288-4545
                                             415/288-4534 (fax)
10
                                             ROBBINS GELLER RUDMAN
11                                                & DOWD LLP
                                             TRAVIS E. DOWNS III
12                                           JEFFREY D. LIGHT
                                             BENNY C. GOODMAN III
13                                           LUCAS F. OLTS

14

15                                                    s/ Jeffrey D. Light
                                             _____
                                                    JEFFREY D. LIGHT
16
                                             655 West Broadway, Suite 1900
17                                           San Diego, CA  92101-3301
                                             Telephone:  619/231-1058
18                                           619/231-7423 (fax)

19                                           Lead Counsel for Plaintiffs

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEM. POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-03445-JW          - 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I shall mail on April 27, 2010, the foregoing document or paper via UPS, next day delivery, to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 26, 2010.

s/ Jeffrey D. Light
JEFFREY D. LIGHT

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: jeffl@rgrdlaw.com

## Mailing Information for a Case 5:06-cv-03445-JW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christopher J. Banks**
  cbanks@morganlewis.com,cericson@morganlewis.com

- **Paul F. Bennett**
  pfb@gbcslaw.com,cgw@gbcslaw.com

- **Brad D. Brian**
  BrianBD@mto.com

- **Walter F. Brown**
  wbrown@orrick.com,awills@orrick.com

- **Michelle Park Chiu**
  mchiu@morganlewis.com,cholsome@morganlewis.com

- **Jeffrey Bruce Coopersmith**
  jeff.coopersmith@dlapiper.com

- **Megan Dixon**
  mdixon@hhlaw.com,mdewers@hhlaw.com,kwong@hhlaw.com

- **Travis E. Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Miles F. Ehrlich**
  miles@ramsey-ehrlich.com,ji-ea@ramsey-ehrlich.com,anjali@ramsey-ehrlich.com

- **Joseph Edward Floren**
  jfloren@morganlewis.com,rluke@morganlewis.com,mweiler@morganlewis.com

- **Jonathan B. Gaskin**
  jgaskin@orrick.com,mticzon@orrick.com

- **Thomas R. Green**
  tgreen@morganlewis.com,thomas.green@usdoj.gov,daniel.charlier-smith@usdoj.gov

- **Emily Victoria Griffen**
  egriffen@shearman.com

- **Felicia Gross**
  felicia@ramsey-ehrlich.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com

- **Alice L. Jensen**
  ajensen@fenwick.com,cprocida@fenwick.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,aslaughter@scott-scott.com

- **Steven Shea Kaufhold**
  skaufhold@akingump.com,kerickson@akingump.com,westdocketing@akingump.com

- **Thomas Samuel Kimbrell**
  thomas.kimbrell@hellerehrman.com,dcdocket@hellerehrman.com,reggie.payne@hellerehrman.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **James Raza Lawrence**
  Raza.Lawrence@mto.com,Sharon.Nial@mto.com

- **Joseph Daniel Lee**
  joseph.lee@mto.com,scott.coyle@mto.com

- **Jeffrey David Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **James Elliot Lyons**
  jlyons@skadden.com,michael.troost@skadden.com,btravagl@skadden.com

- **Liwen Arius Mah**
  lmah@fenwick.com,docketcalendarrequests@fenwick.com,rjones@fenwick.com,kragab@fenwick.com,jphan@fenwick.com

- **Ryan David Marsh**
  rdmarsh@hhlaw.com,dylewis@hhlaw.com,kwong@hhlaw.com

- **Craig David Martin**
  cmartin@mofo.com,patherton@mofo.com

- **Lanelle Kay Meidan**
  lanelle.meidan@skadden.com,jschilli@skadden.com

- **Timothy Alan Miller**
  tmiller@skadden.com,michael.troostt@skadden.com,PLOCKWOO@skadden.com,elanders@skadden.com,mborden@skadden.com

- **Kevin Peter Muck**
  kmuck@fenwick.com,cprocida@fenwick.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Leigh Anne Parker**
  lparker@weisslurie.com

- **Warrington S. Parker , III**
  wparker@orrick.com

- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,celestine.seals@dlapiper.com,stacy.murray@dlapiper.com

- **Ismail Jomo Ramsey**
  izzy@ramsey-ehrlich.com,ji-ea@ramsey-ehrlich.com,miles@ramsey-ehrlich.com,anjali@ramsey-ehrlich.com

- **Patrick David Robbins**
  probbins@shearman.com,rcheatham@shearman.com

- **David R. Scott**
  drscott@scott-scott.com

- **Michael Todd Scott**
  tscott@orrick.com,elee@orrick.com

- **Michael J. Shepard**
  mjshepard@hhlaw.com,djmelo@hhlaw.com,mdewers@hhlaw.com,kwong@hhlaw.com

- **Arthur L. Shingler , III**
  ashingler@scott-scott.com,efile@scott-scott.com

- **Benjamin Patrick Smith**
  bpsmith@morganlewis.com,ewoodward@morganlewis.com

- **Robert P. Varian**
  rvarian@orrick.com,bclarke@orrick.com

- **Matthew S. Weiler**
  mweiler@morganlewis.com,eyemoto@morganlewis.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,travisd@rgrdlaw.com,cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,lolts@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf(

- **Christopher Martin Wood**
  cwood@csgrr.com,aserros@csgrr.com,jdecena@csgrr.com,khuang@csgrr.com

- **Denise V. Zamore**
  dzamore@scott-scott.com,cmcgowan@scott-scott.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Mark A. Belnick
Law Offices of Mark A. Belnick, LLC
120 West 45th Street
Suite 1700B
New York, NY 10036
```

**Manual Notice**

Robert A. Long, Jr.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
    202/662-6000
    202/662-6291 (Fax)