MORGAN, LEWIS & BOCKIUS LLP
JOHN H. HEMANN, State Bar No. 165823
JOSEPH E. FLOREN, State Bar No. 168292
REBECCA A. FALK, State Bar No. 226798
MATTHEW S. WEILER, State Bar No. 236052
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000; Fax: (415) 442-1001
Email:   jhemann@morganlewis.com
         jfloren@morganlewis.com
         rfalk@morganlewis.com
         mweiler@morganlewis.com

Attorneys for Nominal Defendant
KLA-TENCOR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re KLA-TENCOR CORP. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. C 06-03445 JW<br><br>**KLA-TENCOR CORPORATION'S JOINDER IN MOTION FOR FINAL APPROVAL OF SETTLEMENT OF DERIVATIVE ACTION**<br><br>Date:    May 24, 2010<br>Time:    9:00 a.m.<br>Judge:   Hon. James Ware |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINDER IN MOTION FOR APPROVAL
USDC – N.D. Cal. No. C 06-03445 JW

Nominal Defendant KLA-Tencor Corporation ("KLA" or the "Company") hereby joins in the Motion of Lead Plaintiff Alaska Electrical Pension Fund seeking Final Approval of the global settlement of this shareholder derivative action. In so doing, KLA adopts Lead Plaintiff's arguments to the extent they are applicable to KLA, and seeks approval of the settlement on the same grounds. Each of the Settling Defendants has evidenced his or her joinder in the settlement and support for final approval through his or her counsel's signature on the Stipulation of Settlement.

In further support of the settlement, KLA submits the following statement to detail certain of the benefits thereof to the Company.[1]

## I. BENEFITS OF SETTLEMENT TO THE COMPANY

KLA is a leading supplier of process control and yield management solutions for the semiconductor and related nanoelectronics industries. Its products, services, software, and expertise are used by virtually every major computer chip manufacturer in the world, as well as in several rapidly developing nanotechnology industries. KLA is headquartered in Milpitas, California, where it conducts a significant part of its manufacturing and research and development operations.

This litigation arises from the Company's historical stock option granting processes and related accounting and disclosure practices, principally during the period 1997 to 2002, during which time the Company was under different management and faced a different competitive environment than today. KLA looks forward to concluding this litigation and to focusing its resources exclusively upon its business operations going forward.

The Company entered into the settlement at the direction of the independent Litigation Committee of the Company's Board of Directors ("Litigation Committee"), which was created in August 2009 and delegated the authority to determine the Company's position in this action. The Litigation Committee consists of three independent directors, each of whom joined the

---

[1] KLA refers to the Declaration of Brian M. Martin dated March 15, 2010 (Docket No. 648) in support of this Joinder.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

JOINDER IN MOTION FOR APPROVAL
USDC – N.D. Cal. No. C 06-03445 JW

Company's board after the filing of and occurrence of all events at issue in this action.[2] KLA's Litigation Committee directed the Company's position in the extensive arm's length negotiations and mediation sessions leading to the global settlement.

As the result of the extended mediation process presided over by the Hon. Layn Phillips, U.S. District Judge (ret.), the Litigation Committee determined, in the exercise of its business judgment, that the settlement and each of its components is fair, reasonable, and adequate to the Company, and is in the best interest of KLA and its shareholders. Lead Plaintiff's Motion for Final Approval details many of the critical factors supporting approval of the settlement, particularly the substantial and immediate financial benefits of the settlement to the Company consisting of $33,202,355 in cash to be received from the Settling Defendants and insurers and $9,437,159 in other financial consideration.

In addition to those factors, the Company has concluded that the settlement provides significant, immediate, and reasonably certain cost savings to the Company, and that the payments provided by the settlement present additional benefits, above and beyond the amount of the payment, through the avoidance of delays, risks, and costs of insurance-related litigation that would otherwise be likely to occur in the event of continued litigation of this action. These additional benefits are summarized below.

---

[2] The members of the Litigation Committee and summaries of their backgrounds are as follows:

Robert M. Calderoni has been a KLA director since March 2007. Mr. Calderoni is the CEO and Chairman of Ariba, Inc. Before joining Ariba in 2001, he was CFO of Avery Dennison Corporation from 1997 to 2001. He is also a director of Juniper Networks, Inc.

John T. Dickson has been a KLA director since May 2007. Mr. Dickson is the former President and CEO of Agere Systems, Inc., a position he held from 2000 until 2005. Prior to that, he was Executive VP and CEO of Lucent's Microelectronics and Communications Technologies Group; VP of AT&T's integrated circuit business; Chairman and CEO of Shographics, Inc.; and President and CEO of Headland Technology Inc. Mr. Dickson is also a director of National Semiconductor Corporation and Frontier Silicon, Ltd.

Kevin J. Kennedy has been a KLA director since May 2007. Mr. Kennedy has been President and CEO of Avaya Inc. since January 2009. Prior to that, he was President and CEO of JDS Uniphase Corporation from 2003 to 2008, and COO of Openwave Systems, Inc. from 2001 to 2003. Previously, Mr. Kennedy spent nearly eight years at Cisco Systems, Inc. and 17 years at Bell Laboratories. Mr. Kennedy is also a director of JDS Uniphase Corporation.

### A. Cost Savings from the Settlement

The Company has financed the litigation of this action and other matters relating to the Company's historical stock options grants since 2006, including among other things investigations by the U.S. Attorney's Office (closed in 2008), SEC (settled in 2007), IRS (settled in 2008), and Department of Labor (settled in 2009), shareholder class action litigation in federal court (settled in 2008) and state court (dismissed in 2009), ongoing litigation between the SEC and one of the Defendants, Kenneth Schroeder, and employment-related litigation between the Company and Mr. Schroeder. Based on its experience in these matters, the Company has a strong factual basis to evaluate the further costs of this litigation in the absence of settlement.

Absent approval of the settlement, the Company will continue to incur significant legal costs for an indeterminate period of time. Those costs include fees of KLA's counsel; economic and accounting experts; forensic experts and extensive warehouses of historical data; time and expense of Company legal management and staff in responding to discovery and managing this litigation; and, pursuant to Delaware law, the Company's By-Laws, and certain indemnification agreements with the Defendants, KLA's obligation to advance attorneys' fees and other expenses to the individual Defendants and numerous witnesses.

Although this action has been pending since May 2006, and substantial litigation has occurred over certain issues, it remains at an early procedural posture. Formal merits discovery has not commenced by or against any of the Defendants or as to the numerous non-party witnesses.[3] Absent settlement, Lead Plaintiff would seek to amend the operative complaint, pleadings motions would be filed, cross-claims and counterclaims may be filed, and extensive fact discovery would ensue among Lead Plaintiff, the Company, and the seventeen Defendants, who are represented by nine separate counsel. Millions of pages of additional documents would be produced by the parties and various non-parties, and reviewed by each of the involved counsel. The action would not be ready for trial until late 2011, at the very earliest.

---

[3] Substantial discovery was conducted by Lead Plaintiff in connection with the investigation and motion to terminate by KLA's former Special Litigation Committee. Additionally, KLA produced voluminous documents to Lead Plaintiff in response to document requests in 2009.

The Company estimates that, absent settlement, it would spend between $3 million and $4 million each calendar quarter going forward – solely for this action – to finance the defense costs that it is obligated to advance, fees and costs of its own counsel, and fees and costs of witnesses who are entitled to advancement of such expenses from the Company. This is a conservative estimate, based on the Company's actual and extensive experience in financing stock option-related litigation over the last four years. These costs would be likely to increase further if the case were to proceed to trial as to some or all of the Defendants. At a minimum, therefore, the Company believes it will have to pay between $18 million and $24 million in the event of continuing litigation in this action, not including the costs of trial, post-trial proceedings, and appeals.[4]

The Company believes that these costs could far exceed any additional recovery that continued litigation might bring, beyond that available now through settlement. For these reasons, the Litigation Committee concluded that the alternative to settlement is unattractive and would impose definite costs and risks upon the Company that are not justified as compared against the benefits of the settlement.

### B. Insurance Benefits of the Settlement

In exercising its business judgment, the Litigation Committee also considered the benefits of the $24,000,000 insurance payment to be received in the settlement within 30 business days of preliminary approval. KLA received the initial portion of these insurance funds in April 2010 and expects to receive the balance of the $24,000,000 owed before the hearing on this motion. Absent the settlement, however, KLA would continue to be deprived of insurance benefits, and could be forced to litigate coverage issues with the insurers, which litigation could take an extended period of time to resolve and would involve additional costs and uncertain recovery.

---

[4] Although the Company theoretically could recover a portion of the fees and expenses advanced as to a particular Defendant if this action were to be litigated to a final judgment against that Defendant, that result would obtain only after the entry of final judgment, including resolution of all appeals, through which the Company would likely be obligated to continue advancing attorneys' fees and expenses; would likely require further litigation by the Company to establish that the affected individual's conduct was such that indemnification is not permitted under the relevant provisions of Delaware law; and would then be subject to uncertain and presently unknowable collection risks.

1 Moreover, in the event the action were to proceed to judgment against any of the Settling
2 Defendants, the facts and legal conclusions supporting such judgment may support an exclusion
3 from insurance coverage, potentially rendering insurance unavailable.
4 In directing the Company to enter into the settlement, the Litigation Committee concluded in its
5 business judgment that these insurance aspects of the settlement are favorable to the Company
6 and support settlement of the action on these terms now.

### C. Other Benefits of the Settlement

The foregoing summary of the cost savings and insurance benefits of the settlement supplements the benefits of and reasons supporting the settlement set forth in the Stipulation and in Lead Plaintiff's papers supporting final approval. The Company, by and through its independent Litigation Committee, has considered each aspect of the settlement in its business judgment, including the financial benefits, governance reforms, releases, and provisions for Plaintiff's Counsel's attorneys' fees, and without reservation recommends final approval of the settlement in its entirety.

### D. Prerequisites to Effectiveness of the Settlement

By its terms, the Effective Date of the settlement is conditioned on the occurrence of four events. Stipulation ¶ V.F(1). The first of these – approval of the settlement by KLA's Board, by and through its independent Litigation Committee – has already occurred. KLA's Litigation Committee approved the settlement, including the financial and corporate governance benefits and Fee and Expense Award, on March 5, 2010.

The remaining three conditions will be satisfied when the Court enters the judgment requested by all parties in the Stipulation, that judgment becomes final, and the related state actions are dismissed. KLA understands the state plaintiffs will dismiss their actions promptly after this Court grants final approval to the settlement. As such, this settlement will become effective promptly upon the finality of the Court's order approving it.

## II. CONCLUSION

For the reasons set forth above, as well as those set forth in Lead Plaintiff's separate motion for final approval, the Company, by and through its independent Litigation Committee, requests that the Court grant final approval of the settlement in its entirety.

Dated: April 26, 2010                        MORGAN, LEWIS & BOCKIUS LLP

By _____/S/ *Joseph E. Floren*_____
           Joseph E. Floren

Attorneys for Nominal Defendant
KLA-TENCOR CORPORATION

DB2/21679731.1